Case No. 15-5183, American Civil Liberties Union et al. Appellants v. Central Intelligence Agency et al. Ms. Chansey for the appellants, Mr. Pulliam for the appellees. Thanks, and before we proceed, I'll just announce for the parties that Judge Tatel will consider these cases based on the recording of the oral argument. Thank you, Your Honor, and good morning. May it please the Court, Hina Shamsi for the appellants in this matter. Your Honors, as you know, the issue in this case is whether the agencies have met their burden of showing that the Senate Intelligence Committee, or SISI's, final report of its investigation into the CIA's torture program is not an agency record subject to the Freedom of Information Act. To meet that burden under this Court's case law, the agencies need to show that the SISI clearly asserted control over the final report. I think it's helpful to divide the evidence in this case into two time periods. The first is the period during which the SISI conducted its investigation and was concerned about the confidentiality of its work product, and the second period was after the investigation SISI's report was complete and those concerns fell away. In the first period, the reason the SISI was concerned about the confidentiality of its work product was because the CIA, the agency that the committee was overseeing, insisted that the SISI's document review and work product storage take place at the agency's facility and on its network drive. During this period, the agencies never obtained the final report that is at issue in this case. After the SISI's investigation and report were done, the SISI's concerns were different, and during that second period of time when the agencies actually obtained the final report, then, as the SISI chairman's contemporary misinstructions show, the SISI's concern was that the agencies read the report, use it, use it as broadly as appropriate as they saw fit to ensure that the lessons it taught about torture and the CIA's lies and misrepresentations to Congress, to the courts, to the American public, and to the media never happened again. So can I ask you a conceptual question that's related to the account that you're giving us, which is that with respect to the initial period, including the 2009 correspondence that both of the parties have discussed in the briefing, is it your view that the 2009 letter just by nature has no bearing on the question before us, or is it that we should look to what the 2009 letter says, and then when we look at what it says, we conclude based on your reading of it that it doesn't preclude the conclusion that these are agency records rather than congressional records? Your Honor, the 2009 letter is evidence in the case, and our position is you look at the evidence in the case, and some of the evidence is relevant, some of the evidence is not, and the 2009 letter is not relevant because as the face of the letter itself reflects, it concerns a negotiated agreement between the SISI as well as the CIA with regard to the SISI's work product at the CIA facility and on the CIA's network drive. So these documents remain congressional records in their entirety and disposition and control over these records even after the completion of the committee's review lies exclusively with the committee? Your Honor... Now, I don't know how the subsequent transmission, I guess that's really the heart of your theory, the subsequent transmission overrides that. That's a really tough burden to meet. I don't see how, help yourself in trying to explain, help me understand how, but this condition is very clear, especially when you align it with the case law which says if Congress has retained control, they've retained control. Well, Your Honor, a couple of points in response to that. By the very terms of the letter itself, it applies to documents that were in the reading room or on the CIA's network server, and that makes perfect sense. Let's just say it only refers to those documents. If you look at paragraph 6 on Joint Appendix 93 and 94, by its terms, the letter specifically refers, starting out with the first sentence, to any documents that are in the reading room and on the network server. The final report was never in that reading room and it was never on the network server. Your Honor, I'm just not seeing the words that say when we say documents, we're referring only to documents that are in the reading room, as opposed to it's just understood some of the documents are going to be created in the reading room. If I may, Judge Edwards. Where are the words? I'm looking, I think the same thing you're looking at. What am I missing? If you start out with the beginning of the paragraph, any documents generated on the network drive, as well as any other notes. As well as any other notes. Absolutely. Documents, drafts, final recommendations, reports, other materials. Generated. Good. Are the property of the committee and will be kept in the reading room solely for secure safekeeping and ease of reference. So we start out in the document with a reference to the documents that were in the reading room and on the server. That's one way to read it, but I guess another way to read it is because it refers to any other notes, documents, draft, and final recommendations, reports, or other materials. That language is capacious enough to encompass the final report. I know you'll say divorce from context, but then if we look at what comes immediately after it, of course there's a reference to the reading room, as you rightly emphasized. But one way to read it is to say, insofar as those documents are kept in the reading room, they're kept there solely for purposes of secure safekeeping and ease of reference. But without detracting from the notion that there may be some such documents that don't come within the reading room, but that still are notes, documents, drafts, and final recommendations, as to which the language later that Judge Edwards referred to still apply. We think, Your Honor, the better reading of the paragraph as a whole, in the context of why this document was entered into and agreed upon, is that it refers only to documents that were actually in the reading room. It wouldn't make sense, if you look at the last sentence of that very paragraph, that the, sorry, the middle sentence of the paragraph on Joint Appendix 94, that the CIA will return the documents to the committee immediately upon request. So the document, this paragraph refers to these documents, these records, in the reading room, on the network drive. It's a really hard read, because the committee obviously is not going to create reports and all these other things in the reading room. They're going to create them wherever they want to create them. Certainly, Your Honor, and nothing in this... And they may, I didn't mean to interrupt, let me just finish my question. Of course. Some may be put in the reading room, everyone's agreed, you can keep them in the reading room for secure purposes, but that doesn't mean the committee has given up what it says. They're strictly congressional records in their entirety. And in their entirety refers to reports and other materials generated by the committee and staff. So, Your Honor, we don't read this document as precluding Congress from asserting clear control over its own records. And, in fact, it did that again during this time period in December 2012 with respect to the initial version of the report that was generated. And when the CC generated that initial version of the report, and I think that's how best to read it, of a piece during this time period when the committee is concerned about its work product, it specifically transmitted those records to the CIA, that report to the CIA, without any reference to the June 2009 document. Instead, there were specific instructions about who could access the document. And access and dissemination were restricted. But we still might look, before we skip ahead to that period and dwell on this a little bit longer, we still might look at the 2009 correspondence as embodying an assumption or an understanding by the committee. And I'm particularly looking at the language, the sentence that Judge Edwards is focused on is, these documents remain congressional records in their entirety, and disposition and control of these records, even after the completion of the committee's review, lies exclusively with the committee. And so the reading, I think, that's asserted by the court below and by the government, and to which I'd like your response, is that the documents that were just referred to, which may go to the reading room, even though they went to the reading room, they remain congressional records. But the fact that the committee uses the language, remain congressional records, could be seen to symbolize an understanding that, of course, these documents that we've described, reports, recommendations and such, are congressional records, subject to our control, we being the committee. And even if they go to the reading room, they still remain congressional records. But what that tells you is that the assumption all along has been the documents that have been described are congressional records. The fact that they may go to the reading room doesn't detract from that understanding, but it solidifies the original assumption that they're congressional records. Your Honor, I think it would be, in order to respond to that question, I think it's important to, again, back up a little bit, which is to talk about what these records are. And the records that the CICI is reviewing, including our CIA's materials, which the CIA is very concerned about the confidentiality of. And based on those records, the CIA may be generating work product. And with respect to that generation, which is what the first sentence in that paragraph refers to, the next sentence refers to these documents remain congressional records in their entirety. And I think that is a better reading of the record because that is more consistent with this court's case law. This court's case law requires that, or this court's case law is skeptical about preexisting agreements, as the court said in United We Stand in referring to Holy Spirit. It looks to whether a document is referred to very specifically, and it also looks to contemporaneous evidence as the most probative evidence of congressional intent. And what we're talking about here is an agreement that was written in 2009, six years before the final report, which is the document that is disputed between the parties here. And as we say, and I understand that there may be some concern or disagreement here, as we say, this final report was never on the system, and therefore it was not covered by the June 2009 letter. But even if you were to disagree with us, even if you were to give credence to this 2009 letter, at best what you're left with is uncertainty about whether the actual final document is covered, and any kind of uncertainty under this court's case law redounds to our benefit. I'm sorry, go ahead. That gets back to the original question I asked, I think, which is that your argument means that no matter how we construe the 2009 letter, it still doesn't matter, that because of what happened at stage two in 2014, whatever we might think about the 2009 letter, the 2014 exchange trumps it. Yes, I would put it with a little bit more nuance, which is to say that the June 2009 letter is irrelevant, however you decide and what you think about what it's relevant might be. It is, in fact, superseded by the fact that Congress never clearly asserted control over the final report, and to the contrary, what the record shows is that the chair of the relevant committee told the agencies to use that report as broadly as appropriate and as they saw fit. That is more nuanced. And that is consistent, Your Honor, again, with this court's case law. This court's case law has some clear rules. One is that the agency has to legitimately come into possession of the document for the congressional control question even to apply, and that comes from tax analysts. It's also consistent with how this court construed tax analysts, the Supreme Court's decision in judicial watch, as well as United We Stand. And the agencies legitimately came into possession of the disputed document in December 2014. No one contests that. At that point, the question is, does Congress assert clear control over the document? No, the other way to look at it is, did Congress cede the control, the clear control that they already had? Your Honor, I think— I think your argument is if I disagree with you about an ambiguity, then you're in trouble, right? If I don't read the nine documents as being ambiguous, I think, quite honestly, so you know what I'm struggling with, I don't think that document is terribly ambiguous. I think you're straining very hard to hook it to network, which to me doesn't make a whole lot of sense. To read it that way is a real strain. So the way I'm looking at the case, if you want to respond, the question is whether Congress gave up the absolutely clear authority that they had over anything produced. And I don't—at least facially, the 2014 document doesn't look like they gave up the control that they had. I understand, Your Honor. If I may respond to that with a couple of responses. One is, this Court's case law is clear in saying that the relevant test is whether Congress has asserted control. And I'm saying my presumption is they asserted it in nine. They hadn't. And it doesn't matter how many years pass, to me anyway, if you either have ownership of something or not. The question is, if you have it, did you give it up somewhere? Right. And, Your Honor, again, I would point you back to this Court's own case law. So taking your point that you're interpreting the June 2009 document to apply to the December 2014 final report, what this Court has said very specifically in 2004 in United We Stand and also in Holy Spirit is that documents over which Congress once asserted control may lose their exclusion from FOIA if Congress fails to express its intent with respect to that specific document with sufficient clarity. And between the June 2009 letter, Your Honor, Judge Edwards, between that, there are multiple other periods of time in which Congress could have but did not clearly assert control with respect to the final report. And our position is, and I understand, Judge Edwards, where your concern rises, our position is that in accordance with this Court's case law, Congress actually has to clearly assert control. And the reason for that is that that is how this Court gives both deference to the congressional concern over oversight as well as secrecy of its own methods as well as balancing the full Congress's broad mandate under the Freedom of Information Act, and that comes straight from United We Stand again in 2004. The Court has also – sorry, Judge. In 2014, if the correspondence in 2014 had referred back to the 2009 letter explicitly, then you wouldn't take the position that that would be some sort of internal contradiction that can't be explained, right? It's just that they would have made something explicit that one might suppose would be implicit, only implicit, which I think you would say under the case law wouldn't be enough. But I guess the question I'm asking is, would it have been internally inconsistent or somehow inexplicable for the correspondence in 2014 to explicitly be made subject to the understanding that underlay 2009? I think that if the correspondence in 2014 had referred back to the June 2009 letter and said what we're doing now is consistent with that June 2009 letter, this would be a much harder case and we may not be here before you. Okay. But it did not. So then the question is, do we read that in, or is that a necessarily implicit understanding? Does it always carry forward as something that informs subsequent correspondence? Those sorts of questions arise. I don't think you should read that in, Your Honor, because that would turn this court's case law and precedent on congressional control on its head. It would have the court reading in an assertion of congressional control from silence. Right now the record is silent with respect to assertion of control with respect to the final document, and silence does not equal control. So at that point, your argument about would we read that understanding as carried forward would rely on our decisions, which, of course, I understand that point. There's one other point that I'd just like to hear your response on, which is the government suggests that the 2014 correspondence doesn't amount to much because it's the correspondence of an individual member. And there may be responses to that, but I'm curious as to what yours is. We don't think we don't agree with the government on that, and I think the way to think about what happened with respect to the December 2014 document is, again, to look at what's consistent with this court's case law. And the court's case law looks to what is contemporaneous congressional instruction at the time that a document is transmitted and comes into legitimate possession of the agency. So as of December 2014, there is no question that Senator Feinstein's transmittal letter is sent on behalf of the committee. There is no question that at any point during that particular time, which is what this court's case law looks to under Paisley, under United We Stand, contemporaneous evidence consistent with around the time of the transmittal. At that point, and from 2012 leading up to that point, after the investigation is completed, the report was being drafted, at that point there is no assertion of control. And not only that, there is no objection by any member of the committee with respect to the legitimate transfer of control, the legitimate transfer of the document by Senator Feinstein to the agencies. And that's really what counts, Your Honor, which is transfer has been legitimate, look at the contemporaneous evidence at the time, and what is post hoc in this case, the kind of post hoc assertion that this court has refused to credit in Holy Spirit, Paisley, and subsequent cases is what happens after the transmittal, and that is Senator Burr's request to call back the document. Thank you. Thank you, Your Honor. Good morning. Good morning. Thomas Pullum for the government. I would just like to pick up, start off with a, to follow up on a question that Judge Edwards posed, which is that the correct view to, the correct way to view this case is that we have a clear assertion of congressional control in 2009 with the letter that the committee sent to the CIA. And the question is, is what happened afterwards enough to override the expression of intent in that letter? And we think it clearly is not. Following 2009, the committee consistently asserted its authority over the report. So before we go to whether whatever was asserted in 2009 was cut back on later, can we just focus on what happened in 2009, in fact, for a second? And I guess my question is a little different from what's been asked to date today on the following axis, which is that the critical language from your perspective, I think, is the clause that says, as well as any other notes, documents, draft, and final recommendations, reports, or other materials generated by committee staff. Because your view is that, well, that tells us that this is an expansive understanding. It encompasses all reports, including ultimately the final report. And I guess my question is, is there a sense in which it's too broad, in that it refers to any other notes, documents, drafts, and final recommendations or other materials generated by committee staff or members? It's not even tied to this investigation, as far as I can tell. Well, with respect, I believe it is tied to this investigation. If we look at the very first paragraphs of the letter, it starts off with the committee has an intention to conduct a thorough review of the CIA's detention and interrogation program. And then we skip to the second paragraph. We agree that the committee, including its staff, will conduct the study of the CIA's detention and interrogation program under the following procedures and understandings. So all of the terms that follow are specifically designated as the procedures and understandings that will govern the committee's study of this CIA program. So in this way, the preexisting agreement is more like the agreement at issue in judicial watch, which the court said, you know, this is not a general expression of intent. This is specifically tied to the types of documents at issue. And it's unlike the letters that the court dismissed in Paisley as too general and sweeping, because in that case they referred to all of the documents of the committee. So you agree that we would have to read the germane clause in paragraph 6 against the backdrop of the last sentence of the second paragraph? Yes, and that makes clear that these are the procedures and understandings that will govern the conduct of the study of this program. So the committee is specifically tying the language in paragraph 6 to this study. It's not saying this is our rule for everything. They are setting out specifically the rules for this study. Now, this correspondence is signed by the chairman and the vice chairman? Yes. And then the later one that we refer to is signed by the chairman? Yes. So what's the difference? I mean, I've read your briefs to be taking the position that we should discount the significance of the later one because it comes from one member. This one looks like it may come from two. Is there a meaningful difference there? Is there something else lurking in the background that should inform? Well, I think there is a meaningful difference here. In 2009, we have the chairman and the vice chairman both signing on to these terms. There's no indication of any disagreement within the committee about what's set out here. And our point with respect to the December 2014 letter is that the views of a single senator may be a less reliable indicator of committee intent in circumstances where there's an indication that other members don't subscribe to that view. We have Senator Burr, who's the chairman of the committee, as soon as he learns of the terms of the letter. So that happens subsequently, and there's arguments about whether that matters since it happened at a point in time after. So at the very least, we say that there are positions that you may just want to exercise some caution in relying solely on the senator's letter to the extent that it's not consistent with actions of the full committee. But here, it really doesn't matter because the terms of that letter are entirely consistent with the consistent exercise of control over the document that the committee has exercised. In 2012 and in April of 2014, the committee provides the report to the CIA for certain internal uses. First, to provide comments on the study in 2014 to conduct declassification. At both times, it expressly reserved the authority to decide whether and to what extent the results of the study would be made public. So in 2012, the letter transmitting the report to the CIA says that the committee will consider how to handle any public release, in full or otherwise, after we've considered the views. In 2014, the committee makes the decision as to how to handle the public release of the study. They vote to request declassification of the executive summary so that that can be released. And a press release accompanying that says that the full report will be held for declassification at a later time. Then we have December 2014 when the committee files the report with the Senate. They publicly release only the executive summary, and the chairman's foreword says decisions will be made later about the release of the full study. So all during this time, the committee is reserving authority to determine whether and to what extent to release the results of its study. The only uses that it's authorized are internal uses in the CIA, and Chairman Feinstein's letter in December 2014 is entirely consistent with that. She does encourage making the report available within the CIA and the executive branch. She says nothing about public disclosure there or release, and she encourages the use of the report for the formulation of training guidelines and procedures. Again, internal uses. So when we look at the backdrop of events here, starting in 2009 with a clear assertion that these documents will be under the control of the committee, are not subject to FOIA. We move to 2012 and 2014. The committee consistently asserts its authority over the document and reserves the authority to decide the scope of public release. From the government's perspective, I take it that the backdrop to understanding the 2014 correspondence is essential. In other words, if all we knew was the 2014 correspondence and we view that in isolation and it refers to use as you see fit and et cetera, then you'd be, I think, in a different position. It would be considerably more difficult. You're trying to square the December 10th. If you take the 2009 and December 10 correspondence, that's a more difficult case. You're saying there was the December 9 as well, right? I'm sorry. It would be a more difficult case if all we had were the December 2014 letter. Right. What I'm saying, 2004. Yeah, December 10. Wasn't there one in December 9? No. Well, there was. What we have are. Mr. Feinstein said the committee was not seeking to declassify in public or release the final report at that time, right? That, I believe, was in the forward to the chairman's forward to the report itself. Okay. So that was part of the report that was filed with the Senate. The letter to the president is dated. And what date was that? Was it the 9th? That was December 10th. The chairman's letter to the president, that's at JA 133. Okay. But to get back to Judge Schroeder-Watson's question, this court's cases clearly instruct us to look at all of the facts of the case and paying particular attention to the circumstances under which the report was generated and the circumstances under which it's transmitted. The 2014 letter here from the chairman to the president could shed light at most only on the circumstances under which it's transmitted. It is not evidence of the circumstances under which the report was generated. So we really do need to look at 2009 to understand half of the test that this court has set out for us. Yeah, you're right in the way you describe it. But, of course, you could also have a situation in which the transmission trumps the generation. It could. It certainly could. But where you have the clear evidence at generation and then you have an absence of evidence at transmission. Then your view is that carries forward. Certainly. And Judicial Watch says so. In that case, we have an overarching agreement between the president and the Secret Service. And there's nothing at all that accompanies transmission of those actual documents. So we have literal silence. And the court did not hesitate at all to find that there was clear control over the documents at issue in that case. So if the court has no further questions, we'll ask that you affirm the judgment of the district court. Thank you. Thank you. Ms. Shamsi, I believe we occupied your time, so we'll give you two minutes of rebuttal. Thank you, Judge Srinivasan. I want to begin just by reiterating that it is the agency's burden to show a clear assertion of congressional control. We've discussed the June 2009 letter. But I think that that clear assertion of the SISI's control is absolutely not reflected with respect to that final document at any point after the SISI completes its work product and starts generating actual reports that it starts sending to the agencies. And I want to emphasize one thing which may have been left unclear by counsel's argument, which is that reservation of authority does not constitute an assertion of control. Because this court's case law in giving deference to Congress while also balancing the requirements of the FOIA requires a clear assertion. And reservation or silence does not constitute that. There was no clear assertion of control. To the contrary, when Senator Feinstein, acting as chair of the committee, transmitted the versions of the report in April 2014 and again the final report in December 2014, which is the document that we seek, that control vis-a-vis the agency, not vis-a-vis the public, because again that's not what this court's case law looks to, vis-a-vis the agency, was transferred with broad language. Use as you see fit. Disseminate as you want. Put into effect congressional intent to make sure the torture and the lies never happen again. And that, I think, is what is most consistent with the case law in accordance with the requirements or the preference for contemporaneous evidence for the skepticism of pre-existing agreements. And should there be any doubt in the court's mind with what the case law says, which is that that doubt should redound to the FOIA requester's benefit.  Thank you, counsel. The case is submitted.
judges: Tatel, Srinivasan, Edwards